IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| IN RE: | CASE NO. 12-00519 (ESL) |
| STEPHEN WHITMAN-NIEVES; JOSEPHINE M. BARNES ADAMS | CHAPTER 7 |
| Debtors | |
| STEPHEN WHITMAN-NIEVES; JOSEPHINE M. BARNES ADAMS | ADV. PROC. NO. 12-00392 (ESL) |
| Plaintiffs | |
| vs. | |
| PUERTO RICO FEDERAL CREDIT UNION | |
| Defendant | |
| NORMA ADAMS-IRIZARRY | |
| Party in Interest | |
| ROBERTO ROMÁN VALENTIN | |
| Chapter 7 Trustee | |

OPINION AND ORDER

This case is before the court upon the *Motion for Summary Judgment* (Docket No. 50) filed by defendant Puerto Rico Federal Credit Union ("PRFCU") arguing that the automatic stay and the discharge injunction provided for in 11 U.S.C. §§ 362 and 524 do not apply to non-debtor third parties. Also before the court is the *Response in Opposition to Defendant's Motion for Summary Judgment* (the "*Opposition*", Docket No. 51) filed by the Plaintiffs contending that the protection of the automatic stay and discharge injunction is applicable to a non-debtor third party, namely the guarantor and party in interest, Ms. Norma Adams-Irizarry (the "Guarantor" or "Ms. Adams"), who is the mother of co-debtor Josephine M. Barnes-Adams ("Barnes-

-1-

Adams"). For the reasons stated herein the *Motion for Summary Judgment* (Docket No. 50) is granted in part and denied in part.

## Jurisdiction

The court has jurisdiction pursuant to 28 U.S.C. §§ 157(a) and 1334(b). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(F). Fed. Rs. Bankr. P. 7001(2) and 7001(9) provide that proceedings to determine the validity, priority or extent of a lien or other interest in property and to obtain a declaratory judgment relating to such validity are adversary proceedings.

## Material Uncontested Facts

From the totality of the record, undisputed documents, stipulations and admissions made by the parties in the instant case, the courts finds uncontested the following material facts under Fed. R. Civ. P. 56:

1.  On July 8, 2011, co-debtor Barnes-Adams renewed a loan with the PRFCU. The loan is evidenced through *Promissory Note* No. 131248 signed by Barnes-Adams in the amount of $10,600. See Docket Nos. 1, p. 22, 45, p. 2, ¶ 1, 50, p. 3, ¶ 3, and 51, p. 5. Her membership number with the PRFCU is 26983. See Docket No. 1, pp. 22 and 24.

2.  On July 8, 2011, co-debtor Barnes-Adams signed a *Pignoration and Authorization Document*. See Docket Nos. 1, p. 29, 45, p. 2, ¶ 2, 50, p. 3, ¶ 4, and 51, p. 5. The document states as follows:

> In consideration of all and any loan granted, that may be granted, or continue to be granted up to now and to the credit financing facilities granted during the past, that may granted [*sic*] or continue to be granted in the future by the [PRFCU] to the undersigned, and/or from now on jointly denominated "the Debtors"[], by virtue of the present document, the undersigned pledges, assigns, leaves as surety, gives, and transfers to the [PRFCU], in order to guarantee and assure payment of all and any other debts and obligations of the debtors, irrespectively of the kind and nature of such debts and obligations, that are due or are currently required, or that will become past due and are required in the future, plus interests, late payment charges, surcharges, costs, expenses, disbursements, and attorney's fees in case of nonpayemt authorize the [PRFCU] to withdraw and collect all the money deposited in the undersigned credit account, as well as the interest due, proceed and payable now and prospectively in relation to the money deposited that is evidenced as follows:

…

[x] Loan type L10.2 member # 26983 in the amount of $10,600.00 for 48 months Biweekly, TOTALLY GUARANTEED by the following share certificate(s): 70005784 I9.1 female member #24613.

It is construed that the undersigned may be able to withdraw from the shares account pledged by those amounts exceeding the due balance of the obligations plus interests and surcharges.

Docket No. 1, p. 24.

On that date, the *Pignoration and Authorization Document* was only signed by Barnes-Adams (PRFCU member 26983) and an officer from PRFCU.

3.      On September 28, 2011, PRFCU "through its representative Eric Sánchez, Service and Credit Supervisor, subscribed … a letter where certifies that Plaintiffs['] loan was guaranteed by [the Guarantor'] savings certificate" (Docket No. 45, p. 3, ¶ 15).  The letter was subscribed by PRFCU's Service Supervisor, addressed to the Guarantor referencing account number 24613 and states as follows:

According to your request, we certify that at the present you have a savings certificate I9.1 in the amount of $10,600.00 in our institute since 07/08/2011. Such [certificate] guarantees the personal loan L10.2 in the name of Josephine Barnes Adams, member number 26983.

Docket No. 1, pp. 18-19.

4.      On January 29, 2012, the Plaintiffs filed a Chapter 7 Bankruptcy Petition along with corresponding schedules (Lead Case Docket Nos. 1-3).  On *Schedule D* they included PRFCU as a partially secured creditor with the following explanation:

07/2011 Personal loan that is partially secured with stocks held and also as collateral a certificate of Deposit of the account codebtor, Ms. Adams (mother of Mrs. Barnes).  Debt is to be re-affirmed by debtor.

Lead Case Docket No. 1, p. 25.

5.      PRFCU was notified of the bankruptcy filing by the Plaintiffs.  See Docket Nos. 45, p. 2, ¶ 4, 50, p. 3, ¶ 7, and 51, p. 5.

6. On February 24, 2012, PRFCU "through its representative Mr. Angel Calderín, Collection Supervisor, subscribed …. a letter where [it] certifies that Plaintiffs['] loan was guaranteed by [the Guarantor's] savings certificate" (Docket No. 45, p. 3, ¶ 16). The letter was subscribed by PRFCU's Collection Supervisor, addressed to co-debtor Barnes-Adams referencing account number 26983 and states as follows:

> According to your request, we certify that at the present you have an active loan with our institution. Said loan is guaranteed with a certificate in the name of Norma Adams Irizarry and described according as it appears in form 19.70005784:
>
> Type of loan:          L10.2
> Amount financed:    $10,600.00
> Current balance:      $9,202.55
> Monthly payment:    $248.88
>
> Docket No. 1, pp. 20-21.

7. On February 2012, PRFCU "learned that Debtors' account was not secured by Party in Interest, Mrs. Norma Adams certificate of deposit" (Docket No. 45, p. 3, ¶ 17).

8. On March 2, 2012, Ms. Adams, to wit, the Guarantor, signed the *Pignoration and Authorization Document* securing Barnes-Adams' pre-petition loan with PRFCU. See Docket No. 45, p. 2, ¶ 6, 50, p. 4, ¶ 8.

9. On May 9, 2012, the court entered the *Discharge of Joint Debtors* (Lead Case Docket No. 19), which was notified to PRFCU. Also see Docket Nos. 45, p. 2, ¶ 7, and 50, p. 5, ¶ 21.

10. On July 2012, PRFCU sent a payment booklet addressed to co-debtor Barnes-Adams to the following address: Cond. Plaza Antillana Edificio 22 Apt. 2201 San Juan, PR 00918. See Docket No. 45, p. 2, ¶ 8, and 50, p. 4, ¶ 10. The address belongs to the Guarantor, Ms. Adams. See Docket Nos. 1, p. 5, ¶ 6, 50, p. 4, ¶ 10, and 51, p. 5.

11. During the pendency of the Lead Case, PRFCU was represented by counsel (Docket No. 50. p. 4, ¶ 11), who received notice of all events in the bankruptcy proceeding. See Docket No. 45, p. 2, ¶ 9.

Procedural Background

On October 25, 2012, the Plaintiffs filed the instant *Complaint* (Docket No. 1) that initiated the instant adversary proceeding alleging that: (a) on March 2, 2012, the Guarantor visited the offices of PRFCU to request a copy of the documents signed at the date of the Plaintiffs' loan and that because she was told that it was not signed and she was given a document for her signature; (b) during the months of January and February of 2012, PRFCU collected the loan monthly payments on the loan; (c) PRFCU received notice of the discharge order in the lead bankruptcy case and had full knowledge of the automatic stay provisions and the discharge injunction; (d) pursuant to 11 U.S.C. § 524, PRFCU was required to stop any and all collection of monies against the Plaintiffs and their property; (e) on July of 2012, the Plaintiffs received, through a mail sent to the Guarantor's address, a payment notebook addressed to co-debtor Barnes-Adams requesting a payment of $1,259.59 on or before July 8, 2012 and subsequent monthly payments in the amount of $248.88 until July 8, 2013; (f) the Plaintiffs have not been able to enjoy the protections afforded by the automatic stay and the discharge injunction; (g) PRCFU's actions have caused the Plaintiffs severe embarrassment, harassment, emotional distress and anxiety episodes that have jeopardized their marriage due to stressful situations and the relationship between co-debtor Barnes-Adams and her mother, the Guarantor; and (h) PRCFU has limited the Guarantor's access to her property by retaining the certificate of deposit as collateral to the Plaintiff's discharged loan because the Guarantor signed the *Pignoration and Authorization Document* on March 2, 2012.  The Plaintiffs claim damages, costs and attorney's fees under 11 U.S.C. §§ 105, 362 and 524.

On November 14, 2013, the parties filed a *Joint Pretrial Report* (Docket No. 45) with stipulations of fact.

On December 30, 2013, PRFCU filed the *Motion for Summary Judgment* (Docket No. 50).  In regards to the automatic stay, PRFCU alleges that: (a) although Section 362 of the Bankruptcy Code precludes all proceedings against a debtor immediately following the filing of a bankruptcy petition, the protection is for the sole benefit and protection of the debtor and of

property of the estate; (b) "property of the estate" as defined in Section 541 of the Bankruptcy Code does not include property belonging to a third party; (c) Section 362(c)(3)(B) is the only section in which a protection for a party in interest is provided and requires that such party requires so by a motion to that effect, which the Guarantor did not request; (d) the Guarantor's certificate of deposit was intended to serve as collateral for the loan renewed by the Plaintiff s and cannot be considered property of the estate because it belongs to non-debtor Ms. Adams; (e) the automatic stay can only be extended to guarantors of a loan in Chapters 12 or 13, not Chapter 7 like the instant case; (f) the mere act of requesting non-debtor Guarantor to sign a *Pignoration and Authorization Document*, which she voluntary did on her visit to PRFCU's office, cannot be construed as a collection effort that violates the automatic stay. In regards to the discharge violation, the Plaintiffs contend that: (a) Section 524 of the Bankruptcy Code is inapplicable to non-debtor parties; (b) the discharge injunction should not preclude PRFCU from their ability to recover a debt from a non-debtor; (c) Ms. Adams is a guarantor who voluntarily pledged her personal certificate of deposit in guarantee of a loan obtained by the Plaintiffs, which makes the discharge injunction inapplicable to her, meaning that neither her, nor her certificate of deposit, are protected by provisions of 11 U.S.C. § 524; and (d) PRFCU cannot be held liable for violating a discharge injunction because it does not apply to third parties and/or their respective personal property.

On January 13, 2014, the Plaintiffs filed their *Response* to PRFCU (Docket No. 51). In regards to the violation of the automatic stay, the Plaintiffs argue that: (a) the Guarantor is a party in interest; (b) a party in interest like the Guarantor has the right to be heard under 11 U.S.C. § 1109; (c) under 11 U.S.C. § 105, no provision of the Bankruptcy Code for the raising of an issue by party in interest shall be construed to preclude the court from, *sua sponte*, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process; (d) the Guarantor is protected by the automatic stay under 11 U.S.C. § 362(k)(1) and has standing to be heard and recover actual and punitive damages under 11 U.S.C. §§ 1109(b) and 105. In regards to the alleged discharge

injunction violation, the Plaintiffs contend that Section 524(a)(2) of the Bankruptcy Code "puts into effect a broad injunction to cover not only legal proceedings, but also any other acts of creditors whether directed at the debtor or at anyone else" (Docket No. 51, p. 9).  They conclude that the Guarantor "is covered upon the protections of the discharge injunction as of the acts perpetrated by [PRFCU]'s [*sic*] to collect a discharge [*sic*] debt".  Id. at p. 9.

On January 29, PRFCU filed a an *Answer to Plaintiff's [] Response in Opposition to Defendant's Motion for Summary Judgment* (Docket No. 52) arguing that 11 U.S.C. § 1109 is applicable only to Chapter 11 cases, not Chapter 7 cases like the instant one and reiterating that the discharge of a Chapter 7 does not eradicate liability to third parties.

Applicable Law & Analysis

*(A)     Standard for Summary Judgment*

Fed. R. Civ. P. 56, applicable in bankruptcy proceedings through Fed. R. Bankr. P. 7056, provides that summary judgment should be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Also see In re Colarusso, 382 F.3d 51, 58 (1st Cir. 2004), citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-323 (1986).  "The summary-judgment procedure authorized by Rule 56 is a method for promptly disposing of actions in which there is no genuine issue as to any material fact or in which only a question of law is involved."  10A Wright, Miller & Krane, Federal Practice and Procedure: Civil 3d § 2712.  "Rule 56 provides the means by which a party may pierce the allegations in the pleadings and obtain relief by introducing outside evidence showing that there are no fact issues that need to be tried."  Id. Summary judgment is not a substitute for a trial of disputed facts; the court may only determine whether there are issues to be tried, and it is improper if the existence of a material fact is uncertain.  Id.  The moving party must "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).

For there to be a "genuine" issue, facts which are supported by substantial evidence must be in dispute, thereby requiring deference to the finder of fact. Furthermore, the disputed facts must be "material" or determinative of the outcome of the litigation. Hahn v. Sargent, 523 F.2d 461, 464 (1st Cir. 1975), cert. denied, 425 U.S. 904 (1976). When considering a petition for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party. Poller v. Columbia Broadcasting Systems, Inc., 368 U.S. 464, 473 (1962); Daury v. Smith, 842 F.2d 9, 11 (1st Cir. 1988).

The moving party invariably bears both the initial as well as the ultimate burden in demonstrating its legal entitlement to summary judgment. Adickes v. Kress & Co., 398 U.S. 144, 157 (1970). Also see López v. Corporación Azucarera de Puerto Rico, 938 F.2d 1510, 1516 (1st Cir. 1991). It is essential that the moving party explain its reasons for concluding that the record does not contain any genuine issue of material fact in addition to making a showing of support for those claims for which it bears the burden of trial. Bias v. Advantage International, Inc., 905 F.2d 1558, 1560-1561 (D.C. Cir. 1990), cert. denied, 498 U.S. 958 (1990).

The moving party cannot prevail if any essential element of its claim or defense requires trial. López, 938 F.2d at 1516. In addition, the moving party is required to demonstrate that there is an absence of evidence supporting the nonmoving party's case. Celotex, 477 U.S. at 325. Also see Prokey v. Watkins, 942 F.2d 67, 72 (1st Cir. 1991); Daury, 842 F.2d at 11. In its opposition, the nonmoving party must show genuine issues of material facts precluding summary judgment; the existence of some factual dispute does not defeat summary judgment. Kennedy v. Josepthal & Co., Inc., 814 F.2d 798, 804 (1st Cir. 1987). Also see Kauffman v. Puerto Rico Telephone Co., 841 F.2d 1169, 1172 (1st Cir. 1988). A party may not rely upon bare allegations to create a factual dispute but is required to point to specific facts contained in affidavits, depositions and other supporting documents which, if established at trial, could lead to a finding for the nonmoving party. Over the Road Drivers, Inc. v. Transport Insurance Co., 637 F.2d 816, 818 (1st Cir. 1980).

The moving party has the burden to establish that it is entitled to summary judgment; no defense is required where an insufficient showing is made. López, 938 F.2d at 1517. The nonmoving party need only oppose a summary judgment motion once the moving party has met its burden. Adickes, 398 U.S. at 159.

Fed. R. Civ. P. 56 was extensively rewritten in 2010. See 10B Wright, Miller & Krane Federal Practice & Procedure: Civil 3d § 2737. Amended subsection (a) of Fed. R. Civ. P. 56 now includes express authority for judgment on less than the entire case denominating it in its subsection title as "Partial Summary Judgment", which allows summary judgment "upon all or any part" of a claim or defense by any party. See Surita Acosta v. Reparto Saman Inc. (In re Acosta), 464 B.R. 86, 94 (Bankr. D.P.R. 2011).

The uncontested facts in the instant case stem from undisputed documents, stipulations and admissions made by the parties.

*(B)    Violation to the Automatic Stay*

The Plaintiffs allege that PRFCU violated the automatic stay: (a) when it collected from the Plaintiffs post-petition loan payments for the months of January and February of 2012; and (b) when it obtained the Guarantor's signature on the *Pignoration and Authorization Document* perfecting PRFCU's security interest post-petition, which is null and void under 11 U.S.C. § 362. See the *Complaint*, Docket No. 1, p. 8, ¶ 10, and p. 10, ¶ 17. PRFCU's *Motion for Summary Judgment* seeks to only dismiss the allegations regarding the Guarantor's post-petition signature on the *Pignoration and Authorization Document* arguing that the automatic stay does not apply to the Guarantor, Ms. Adams, and therefore it did not violate the same. The Plaintiffs reply that the Guarantor is a party in interest under 11 U.S.C. § 1109, which entitles her to a right to be heard and to claim and receive damages under 11 U.S.C. § 362(k)(1). See Docket No. 51, p. 8.

The court denies the Plaintiffs' argument under 11 U.S.C. § 1109, for it is only applicable to Chapter 11 cases, not Chapter 7 like the instant one.

"Two of the fundamental underpinnings of the [Bankruptcy] Code are the automatic stay and the discharge injunction. The automatic stay has broad application and prevents creditors from seeking to collect a pre-petition debt from debtors or assets of the [bankruptcy] estate. The discharge injunction safeguards the 'fresh start' of debtors by permanently enjoining creditors from collecting discharged debts." Alley v. Saxon Mortg. Servs. (In re Alley), 2014 Bankr. LEXIS 2843 at *5, 2014 WL 2987656 at *2 (Bankr. D. Me. 2014) (citations omitted).

"The automatic stay imposes on non-debtor parties an affirmative duty of compliance." Otero López v. Dep't of Treasury of P.R. (In re Otero López), 492 B.R. 595, 607 (Bankr. D.P.R. 2013), citing Sternberg v. Johnston, 595 F.3d 937, 943 (9th Cir. 2010). To ensure compliance, Section 362(k) of the Bankruptcy Code provides the necessary means to redress violations of the stay: "an individual injured by a willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and in appropriate circumstances, may recover punitive damages". 11 U.S.C. § 362(k)(1). "A debtor seeking damages under this section bears the burden of proving by a preponderance of the evidence the following three elements: (1) that a violation of the automatic stay occurred; (2) that the violation was willfully committed; and (3) that the debtor suffered damages as a result of the violation." Slabicki v. Gleason (In re Slabicki), 466 B.R. 572, 577-578 (B.A.P. 1st Cir. 2012), citing In re Panek, 402 B.R. 71, 76 (Bankr. D. Mass. 2009). "A willful violation does not require a specific intent to violate the automatic stay." In re Otero López, 492 B.R. at 607. "The standard for a willful violation of the automatic stay ... is met if there is knowledge of the stay and the defendant intended the actions which constituted the violation." Fleet Mortgage Group v. Kaneb, 196 F.3d 265, 269 (1st Cir. 1999). "The debtor has the burden of providing the creditor with actual notice. Once the creditor receives actual notice, the burden shifts to the creditor to prevent violations of the automatic stay." Id. at 269. "In cases where the creditor received actual notice of the automatic stay, courts must presume that the violation was deliberate." Id. at 269.

The Guarantor is not a debtor in the instant case. Co-debtor Barnes-Adams' filial relationship to Ms. Adams does not make her a debtor nor transfers to her the protections

afforded in the Bankruptcy Code applicable to Chapter 7 cases. Generally, the automatic stay "does not… protect nonparties, such as, for example, guarantors of debtor's debt". Hon. Nancy C. Dreher, Hon. Joan N. Feeney and Michael J. Stepan, Esq. Bankruptcy Law Manual § 7:4 Vol. 1 (5th ed. 2013-1), pp. 1488-1489. Also see Naval Stores Suppliers, Inc. v. LGS Consulting, LLC, 2010 U.S. Dist. LEXIS 120889 at **13-14, fn. 7, 2010 WL 4608749 (Bankr. D.R.I. 2010) ("Section 362 [of the Bankruptcy Code] does not apply automatically to actions against debtor's principals, partners, officers, employees, guarantors, or sureties"); Rhode Island Hosp. Trust Nat'l Bank v. Dube, 136 F.R.D. 37, 39 (D.R.I. 1990); Winters v. George Mason Bank, 94 F.3d 130, 133 (4th Cir. 1996) ("It is well settled that the automatic stay does not apply to non-bankrupt codebtors, nor does the automatic stay prevent actions against guarantors of loans"); In re Kevin W. White, 415 B.R. 696, 698 (Bankr. N.D. Ill. 2009) ("Generally, the automatic stay protects the bankruptcy debtor and does not bar suits against third parties, such as nondebtor entities, even when wholly owned by the debtor, or the debtor's insurers, guarantors, and sureties").

In Credit Alliance Corp. v. Williams, 851 F.2d 119, 121 (4th Cir. 1988), the U.S. Court of Appeals for the Fourth Circuit explained that:

> Nothing in § 362 suggests that Congress intended that provision to strip from the creditors of a bankrupt debtor the protection they sought and received when they required a third party to guaranty the debt. Congress knew how to extend the automatic stay to non-bankrupt parties when it intended to do so. Chapter 13, for example, contains a narrowly drawn provision to stay proceedings against a limited category of individual cosigners of consumer debts. See 11 U.S.C. § 1301(a). No such protection is provided to the guarantors of Chapter 11 bankrupts[1] by § 362(a).

The U.S. Court of Appeals for the First Circuit (the "First Circuit") has ruled that the automatic stay provisions of Section 362 "apply only to the bankrupt debtor" and "[c]ourts that have come to a different conclusion do not appear to have done so on the basis that § 362 requires such a result, but rather that additional considerations warrant a stay as to all defendants." Austin v. Unarco Industries, Inc., 705 F.2d 1, 5 (1st Cir. 1983). Courts that have

---

[1] The notion applies to Chapter 7 cases.

allowed a narrow exception to the general rule that the automatic stay is not available to third parties take into consideration the following reasoning:

> In order for relief for such non-bankrupt defendants to be available under (a)(1), there must be "unusual circumstances". … This "unusual situation", it would seem, arises when there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor.

> A.H. Robins Co. v. Piccinin, 788 F.2d 994, 999 (4th Cir. 1985), cert. denied, 479 U.S. 876 (1986).

In In re Bora Bora, Inc., 424 B.R. 17 (Bankr. D.P.R. 2010), the debtor in possession filed a motion requesting that the protection of the automatic stay under 11 U.S.C. § 362(a)(1) be extended to its non-debtor president and guarantor, and a motion requesting that the court enjoin a creditor from continuing a collection action against the president and guarantor, based on his personal guaranty contract with the creditor. The court first determined that "Section 362(a)(1) provides for an automatic stay of any judicial proceeding against the debtor, thereby protecting the debtor and not prohibiting actions against non debtor third parties or co-defendants." Id. at 23. Notwithstanding, "the power of the bankruptcy courts to enjoin certain actions not subject to the automatic stay, such as an action against non debtor parties, has been recognized, when such action is interfering improperly with the purposes of the bankruptcy law or the debtor's reorganization efforts". Id. at 23, citing A.H. Robins Co. v. Piccinin, *supra*. Hence, courts may issue "preliminary injunction extending the section 362(a) stay protection to non-debtors … analyz[ing] both whether the extension of the stay under Section 362(a) is proper and whether the issuance of an injunction under [Section] 105(a) is proper, which means that in order for the injunction to be issued the requirements of both statutes must be satisfied." In re Bora Bora, Inc., 424 B.R. at 24. Hence, courts that have extended the automatic stay to non debtor third parties when "unusual circumstances" exist, "such as when (*i*) the non-debtor and debtor enjoy such an identity of interests that the suit of the non-debtor is essentially a suit against the debtor; or (*ii*) the third-party action will have an adverse impact on the debtor's

-12-

ability to accomplish reorganization." Id. at 27, citing In re Philadelphia Newspapers, LLC, 407 B.R. 606, 616 (E.D. Pa. 2009).

In the instant case, the Plaintiffs have not alleged or demonstrated any such unusual situation or circumstance.  Nor did they request the automatic stay to be extended to the Guarantor prior to alleging that she is entitled to its protection.  Hence, the general rule that a non-debtor guarantor is not entitled to the protection of the automatic stay prevails.  The Plaintiffs therefore cannot seek to void the *Pignoration and Authorization Document* under 11 U.S.C. § 362(a) upon the Guarantor's post-petition signature on it nor claim damages under 11 U.S.C. § 362(k).

*(C)     Violation to the Discharge Injunction*

The Plaintiffs were granted discharge on May 9, 2012 (Lead Case Docket No. 19).  They allege that PRFCU violated the discharge injunction when on July of 2012 it sent a payment booklet addressed to co-debtor Barnes-Adams to the Guarantor's address requesting payments of $1,259.58 and subsequent monthly payments in the amount of $248.88.  See the *Complaint*, Docket No. 1, p. 9, ¶ 15.  PRFCU contends that the Guarantor is not a debtor in this case and hence the debt was not discharged in regards to her.  See Docket No. 52, p. 4, ¶ 15.  The Plaintiffs reply that the discharge injunction afforded in Section 524(a)(2) of the Bankruptcy Code "puts into effect a broad injunction to cover not only legal proceedings, but also any other acts of creditors **whether directed at the debtor or at anyone else**" (Docket No. 51, p. 9, emphasis in the original).

"[U]nder § 524(a)(2), a discharge operates as an injunction against the enforcement of any discharged debt as a personal liability of the debtor, including the continuation of legal process, offsets, or other collection efforts against the debtor, even if the debtor waived the right to discharge with respect to the debt."  Hon. Nancy C. Dreher, Hon. Joan N. Feeney and Michael J. Stepan, Esq. Bankruptcy Law Manual § 8:2 Vol. 2 (5th ed. 2013-1), pp. 7-9.  In other words, "a discharge in bankruptcy relieves a debtor from all pre-petition debt, and § 524(a)

permanently enjoins creditor actions to collect discharged debts". Bessette v. Avco Fin. Services, Inc., 230 F.3d at 444.

In Delgado Laboy v. FirstBank P.R. (In re Delgado Laboy), 2010 Bankr. Lexis 345 at **15-18, 2010 WL 427780 at **5-6 (Bankr. D.P.R. 2010), this court summarized the effect of the discharge injunction in Section 524(a)(2) of the Bankruptcy Code as follows:

> The effect of a bankruptcy discharge is that it "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived." 11 U.S.C. § 524(a)(2). The discharge injunction is the mechanism which allows the debtor to commence debt-free his or her fresh start. See In re Latanowich, 207 B.R. 326, 334 (Bankr. D. Mass. 1997) ("The purpose of the permanent injunction set forth at § 524(a)(2) and reiterated in the discharge order is to effectuate one of the primary purposes of the Bankruptcy Code: to afford the debtor a financial fresh start."); Green v. Welsh, 956 F.2d. 30, 33 (2nd Cir. 1992); Baker v. Sommerville Mun. Fed. Credit Union (In re Baker), 2006 Bankr. Lexis 3183 (Bankr. D. Mass. 2006). The discharge injunction is like a permanent extension of the automatic stay under 11 U.S.C. § 362(a) of the Bankruptcy Code and thus, includes all types of collection activity such as; letters, phone calls, threats of criminal proceedings or other adverse actions brought about with the purpose of debt repayment. See Alan N. Resnick & Henry J. Sommer, 4 Collier on Bankruptcy ¶ 524.02[2] (15th ed. 2009); Ung v. Boni (In re Boni), 240 B.R. 381, 384 n.5 (B.A.P. 9th Cir. 1999). Moreover, "[c]reditors are obligated to maintain procedures to ensure that they do not violate section 524, and may be held liable for damages and attorney's fees if they do not." Alan N. Resnick & Henry J. Sommer, 4 Collier on Bankruptcy ¶ 524.02[b] (15th ed. 2009). See In re Roush, 88 B.R. 163, 165 (Bankr. S.D. Ohio 1988); Faust v. Texaco (In re Faust), 270 B.R. 310, 317 (Bankr. M.D. Ga. 1998); In re Nassoko, 405 B.R. 515, 521 (Bankr. S.D.N.Y. 2009). "Although § 524(a), which establishes the discharge injunction, does not include a specific provision setting out available remedies for violations of the discharge injunction, bankruptcy courts invoke § 105(a), which grants bankruptcy court's broad equitable powers, to enforce the discharge injunction, using the mechanism of civil contempt action." Parker v. Boston Univ. (In re Parker), 334 B.R. 529, 537-538 (Bankr. D. Mass. 2005). See U.S. v. Rivera Torres (In re Rivera Torres), 309 B.R. 643,647 (B.A.P. 1st Cir. 2004); In re Pratt, 324 B.R. [1, 5 (Bankr. D. Me. 2005)]; Bessette v. Avco Fin. Servs., Inc., 230 F. 3d 439, 445 (1st Cir. 2000), cert. denied, 532 U.S. 1048, 121 S. Ct. 2016, 149 L. Ed. 2d 1018 (2001).

> The standard for a willful violation of the discharge injunction under § 524(a)(2) is met if the defendant had knowledge of the discharge injunction and the same intended the actions which constituted the violation. See Fleet Mortg. Group, Inc. v. Kaneb, 196 F. 3d 265, 268 (1st Cir. 1999); In re Pratt, 462 F. 3d at 21 (1st Cir. 2006); Alan N. Resnick & Henry J. Sommer, 4 Collier on Bankruptcy ¶

-14-

524.02[2][c] (15th ed. 2009). The defendant must have actual or constructive knowledge of the discharged debt for the knowledge requirement to be satisfied. See Torres v. Chase Bank U.S.A., N.A. (In re Torres), 367 B.R. 478, 490 (Bankr. S.D.N.Y. 2007). Civil contempt must be proven by clear and convincing evidence. Ellis v. Dunn (In re Dunn), 324 B.R. 175, 179 (D. Mass. 2005).

Also see Collins v. Wealthbridge Mortg. Corp. (In re Collins), 474 B.R. 317, 320 (Bankr. D. Me. 2012) ("A creditor violates the discharge injunction when it: (1) commits an act that violates the discharge injunction with the general intent to commit the act and (2) acts with knowledge of the discharge order.") The court will apply the two-prong test established by the First Circuit in Fleet Mortg. Group, Inc. v. Kaneb, 196 F. 3d at 268, and In re Pratt, 462 F. 3d at 21, to determine if there was a willful violation to the discharge injunction in the instant case. "To be contumacious, the creditor's action must operate to coerce or harass the debtor improperly." In re Collins, 474 B.R. at 320. In the First Circuit, "courts are to use an objective test in determining whether a creditor's actions were improperly coercive under the circumstances." Lumb v. Cimenian (In re Lumb), 401 B.R. 1, 6 (B.A.P. 1st Cir. 2009). In Pratt, the First Circuit defined the "objectively coercive" standard explaining that "even legitimate state-law rights exercised in a coercive manner might impinge upon the important federal interest served by the discharge injunction, which is to ensure that debtors receive a 'fresh start' and are not unfairly coerced into repaying discharged prepetition debts." 462 F.3d at 19. "While there appears to be no parallel First Circuit definition for harassment, Congress clearly intended that any behavior engaged in by a creditor that pressures a debtor to repay a discharged debt in any way is prohibited by § 524". In re Collins, 474 B.R. at 320, citing Senate Report No. 95-989 ("[11 U.S.C. § 524(a)] has been expanded ... to cover any act to collect, such as dunning by telephone or letter, or indirectly through friends, relatives, or employers, harassment, threats of repossession, and the like. The change is ... intended to insure that once a debt is discharged, the debtor will not be pressured *in any way* to repay it."). In each case, the conduct of the imputed discharge violation must be assessed "in the context of its particular facts." In re Schlichtmann, 375 B.R. 41, 95 (Bankr. D. Mass 2007), citing Pratt, 462 F.3d at 19.

"Although Section 524(a) provides that a debtor is no longer personally liable to a creditor, Section 524(e) of the Code provides that the discharge 'does not affect the liability of any other entity on, or the property of any other entity for, such debt.'" In re Morris, 430 B.R. 824, 828 (Bankr. W.D. Tenn. 2010), quoting 11 U.S.C. § 524(e).  In other words, Section 524(e) "does not eradicate liability of third parties…". Simpson v. Rodgers (In re Rodgers), 266 B.R. 834, 836 (Bankr. W.D. Tenn. 2001).  In Green v. Welsh, 956 F.2d 30, 33 (2nd Cir. 1992), the U.S. Court of Appeals for the Second Circuit stated that the language in Section 524(e) "reveals that Congress sought to free the debtor of his personal obligations while ensuring that no one else reaps a similar benefit".  Moreover, the First Circuit has established that Section 524(e) "has been interpreted as preserving the liability of a guarantor on the obligations of a debtor whose debts have been discharged in bankruptcy". Federal Deposit Ins. Corp. v. Ponce, 904 F.2d 740, 748 (1st Cir. 1990).

In the instant case, the discharge injunction afforded to the Plaintiffs does not extend to the Guarantor.  Therefore, the debt is not discharged in regards to Ms. Adams.  From the stipulated facts, however, it is clear that PRFCU made a collection effort against co-debtor Barnes-Adams through her mother, the Guarantor. See Docket No. 45, p. 2, ¶ 8.  Such action is prohibited by 11 U.S.C. § 524(a). See In re Collins, 474 B.R. at 320, citing Senate Report No. 95-989 ("[11 U.S.C. § 524(a)] has been expanded ... to cover any act to collect, such as dunning by telephone or letter, or indirectly through friends, **relatives**, or employers, harassment, threats of repossession, and the like.  The change is ... intended to insure that once a debt is discharged, the debtor will not be pressured *in any way* to repay it.").  Therefore, the court finds that when PRFCU sent the payment booklet to co-debtor Bares Adams at her mother's address, to wit, the Guarantor, it violated the discharge injunction.

Conclusion

In view of the foregoing, the *Motion for Summary Judgment* (Docket No. 50) is hereby partially granted to dismiss the causes of actions relating to the violations to the automatic stay as they pertain to the Guarantor, her alleged damages and to void the *Pignoration and*

*Authorization Document*. It is denied as to the dismissal of the violation to the discharge injunction.

A pretrial hearing on the remaining controversies and damages resulting from PRFCU's violation of the discharge injunction is hereby scheduled for **November 21, 2014 at 9:30 a.m**.

SO ORDERED.

Partial judgment will be entered accordingly.

In San Juan, Puerto Rico, this 3rd day of October, 2014.

Enrique S. Lamoutte
United States Bankruptcy Judge